1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSE TRINIDAD MARTINEZ                No.  2:23-cv-00447 DJC JDP
      SANTOYO,
12
                      Petitioner,
13                                          ORDER
            v.
14
      LASHA BOYDEN, et al.,
15
                      Respondents.
16

17          Petitioner is represented by counsel and has filed this Petition for Writ of

18    Habeas Corpus pursuant to 28 U.S.C. § 2241.  The matter was referred to a United

19    States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

20          On September 9, 2023, the Magistrate Judge issued Findings and

21    Recommendations herein which were served on both parties and which contained

22    notice that any objections to the Findings and Recommendations were to be filed

23    within fourteen days.  (ECF No. 16.)  Petitioner has filed objections to the Findings and

24    Recommendations (ECF No. 17) and Respondents have filed a response (ECF No. 18).

25          In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule

26    304, this Court has conducted a *de novo* review.  Having carefully reviewed the entire

27    file, the Court finds the Findings and Recommendations to be supported by the

28    record and by proper analysis.

1

**BACKGROUND**

2      A complaint for Petitioner's arrest and extradition to Mexico was originally filed

3   on August 1, 2021.  (Compl. (*United States v. Martinez Santoyo,* 2:22-cr-00141-TLN-

4   KJN, ECF No. 1); *see In re Extradition of Jose Trinidad Martinez Santoyo*, 2:21-mj-

5   00125-KJN, ECF No. 1.)  The complaint sought Petitioner's arrest pending possible

6   extradition based on a warrant for Petitioner's arrest issued in Colotlan, Jalisco,

7   Mexico for a charge of "Aggravated Intention Homicide with Advantage".  (*Id.* at 2.)

8   Mexican officials allege that Petitioner shot and killed the Decedent, Vela Miranda, on

9   December 20, 2013, "outside of a pool hall called 'Billar Tenzompa,' located in the

10   community of Tenzompa, Huejuquilla el Alto, Jalisco, Mexico."  (*Id.*)

11      Following Petitioner's arrest, Petitioner was ordered detained pending trial by

12   Magistrate Judge Kendall J. Newman but was subsequently ordered released on bail

13   by District Judge Troy L. Nunley pending extradition proceedings.  (Order Granting

14   Mot. for Bail (*United States v. Martinez Santoyo,* 2:22-cr-00141-TLN-KJN, ECF No. 37).)

15   During extradition proceedings, Petitioner sought to compel production of evidence

16   related to the Decedent.  (Mot. to Compel (*In re Extradition of Jose Trinidad Martinez*

17   *Santoyo*, 2:21-mj-00125-KJN, ECF No. 37).)  Judge Newman, as the extradition court,

18   granted that request for evidence "regarding whether the witness statements were

19   obtained by coercion, duress, or torture" but denied the motion as it related to

20   evidence of the Decedent's alleged ties to drug trafficking and the Los Zetas cartel.

21   (Order Granting in Part Mot. to Compel (*In re Extradition of Jose Trinidad Martinez*

22   *Santoyo*, 2:21-mj-00125-KJN, ECF No. 49).)

23      On February 22, 2023, Judge Newman held an extradition hearing.  (Minutes of

24   2/22/23 Hr'g (*In re Extradition of Jose Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN,

25   ECF No. 54).)  At that hearing, Judge Newman found the Government had met its

26   burden of proof and subsequently issued an order certifying the extradition of

27   Petitioner.  (*Id.*; Order Granting Mot. for Certification of Extradition (*In re Extradition of*

28   *Jose Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN, ECF No. 54).)  Judge Newman

1   also denied the Government's request for Petitioner to be remanded into custody.

2   (Minutes of 2/22/23 Hr'g; *see* Order Denying Mot. for Recons. of Pre-Extradition

3   Release (*In re Extradition of Jose Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN, ECF

4   No. 58).)

5           Petitioner brought the present Petition for Writ of Habeas Corpus to challenge

6   Magistrate Judge Newman's February 24, 2023 Order finding that Petitioner could be

7   extradited to Mexico to be prosecuted for aggravated homicide as well as Judge

8   Newman's partial denial of Petitioner's Motion to Compel.  (ECF No. 1.)  Petitioner

9   subsequently filed a First Amended Petition that challenges these orders on five

10  grounds: (1) the extradition court erred by denying Petitioner's motion to compel; (2)

11  there is insufficient and competent reliable evidence to support probable cause; (3)

12  there is insufficient evidence supporting probably cause for the element of "undue

13  advantage"; (4) the extradition court erred in excluding Petitioner's explanatory

14  evidence; and (5) Petitioner's extradition was time-barred under the relevant treaty.

15  (First Amended Petition (ECF No. 11).)  On September 28, 2023, Magistrate Judge

16  Jeremy D. Peterson, as the referral judge in the present habeas action, issued

17  Findings and Recommendations recommending that the habeas petition be denied.

18  (Findings and Recommendations ("F. & R.") (ECF No. 16).)  Petitioner has objected to

19  portions of those Findings and Recommendations.  (Pet'r's Obj. (ECF No. 17).)

**PETITIONER'S OBJECTIONS**

21          Petitioner objects to the Findings and Recommendation on five bases: (1) the

22  Magistrate Judge erred in finding that the United States does not hold exculpatory

23  evidence arising from its own investigation of the decedent; (2) the Magistrate Judge

24  erred in holding that it was Petitioner's burden to enforce the extradition court's clear

25  order; (3) exclusion of the gunshot residue report from Mexican authorities denied

26  due process; (4) the Magistrate Judge erred in finding that the decedent was not

27  armed; and (5) the Magistrate Judge erred in holding that the Sixth Amendment

28

1  speedy trial right does not apply in this case.[1]  (*See* Pet'r's Obj.)

2       The Court reviews *de novo* "those portions of the report or specified proposed

3  findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

4  On a habeas petition from extradition proceedings, habeas review is limited to

5  whether "(1) the extradition magistrate had jurisdiction over the individual sought, (2)

6  the treaty was in force and the accused's alleged offense fell within the treaty's terms,

7  and (3) there is 'any competent evidence' supporting the probable cause

8  determination of the magistrate."  *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006).

9      **I.**     **Exculpatory Evidence Regarding the Decedent**

10       The Magistrate Judge in the habeas action, Judge Peterson, correctly found

11  that the Magistrate Judge in the extradition action, Judge Newman, did not abuse his

12  discretion in ruling that evidence regarding the decedent's alleged connections to

13  drug dealing and the Los Zetas cartel was not explanatory for purposes of probable

14  cause.

15       The decision of an extradition court to deny discovery can be reviewed by a

16  habeas court.  *See Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986).

17  However, such a review only examines whether "the magistrate's decision to deny

18  discovery constituted an abuse of discretion that deprived the accused of due

19  process."  *Id.*

20       During extradition proceedings "neither the Federal Rules of Evidence nor the

21  Federal Rules of Criminal Procedure apply" and the accused may only admit evidence

22  that "explain[s] matters referred to by the witnesses for the government[.]"  *Santos v.*

23

---

24  [1] The phrasing of Petitioner's objections can lead to confusion as they often do not specify whether the
Magistrate Judge being referenced is Judge Peterson, the Magistrate Judge to whom the present

25  Habeas Petition was referred, or Judge Newman, the Magistrate Judge who presided over the
extradition proceedings.  Where possible, the Court will specify the court or judge in question to avoid

26  this issue.  The Court also notes that the titles of Petitioner's objections do not always accurately reflect
the actual order of the extradition court.  For example, one of Petitioner's objections is that "the

27  Magistrate Judge erred in holding that it was Petitioner's burden to enforce the extradition court's clear
order" despite the Findings and Recommendations making no such holding.  (*See* F. & R. at 3 n.1.)  This

28  order addresses the actual substance of Petitioner's objection.

1   *Thomas*, 830 F.3d 987, 992 (9th Cir. 2016).  Such "explanatory" evidence, evidence

2   that "'might [explain] ambiguities or doubtful elements' in the government's case[,]"

3   differs from "contradictory" evidence, which is evidence that simply contradicts the

4   evidence of probable cause presented by the government.  *Id.* at 993 (citing *Collins v.*

5   *Loisel*, 259 U.S. 309, 315–16 (1922) and *Carlton v. Kelly*, 229 U.S. 447, 461 (1913)).

6        Here, the extradition court ruled that while evidence related to the use of

7   torture, duress, or coercion in collecting witness statements needed to be disclosed as

8   it could potentially be explanatory, evidence related to the decedent's alleged

9   involvement in drug trafficking and the Los Zetas drug cartel was, at best,

10  contradictory and thus not admissible.  (Order Granting in Part Mot. to Compel at 7–8.)

11  Judge Newman reasoned that involvement with the cartel could not negate probable

12  cause for the incident in question as, unlike the usage of torture or coercion in

13  obtaining witness statements, the decedent's involvement in the drug trade did not

14  have any bearing on "the manner of collection of the witness statements." (*Id.*)

15  Further, Judge Newman found that any argument by Petitioner that the evidence must

16  be disclosed as it could indicate the corruption of Mexican officials would violate "the

17  diplomatic principle of non-inquiry . . . ." (*Id.* at 8.)

18       Judge Newman did not abuse his discretion in reaching this conclusion and

19  thus Judge Peterson's finding to that effect was correct.  Unlike concerns about the

20  manner and method of statement collection, information about a decedent's cartel

21  ties cannot properly be considered explanatory as it does not seek to resolve

22  ambiguities or doubtful elements of the government's case establishing probable

23  cause.  As suggested by the extradition court, it is not even clear that such evidence

24  could even be considered contradictory evidence absent some indication of the

25  relevance of the decedent's alleged cartel ties.

26       In Petitioner's original motion to compel as well as in subsequent motions, he

27  does not provide a clear statement of how such evidence will be relevant, instead

28  asserting that *Brady* is applicable in extradition actions and arguing the evidence may

1    be relevant by broadly suggesting the evidence could go to the general credibility of

2    witnesses and the possibility for corruption of Mexican officials.  (Motion to Compel at

3    9–12.)  For purposes of extradition proceedings, Petitioner was not permitted to

4    "impeach government witnesses or produce witnesses whose testimony contradicts

5    evidence already offered by the government."  *Santos*, 830 F.3d at 993.  As such,

6    Judge Newman made an appropriate determination that this evidence was not

7    relevant as even if it went to credibility, it would not be explanatory.  The possibility

8    that the evidence might provide some indication of corruption is also similarly not

9    relevant or explanatory as they have no direct bearing on the existence of probable

10    cause.  *See Prasoprat v. Benov*, 421 F.3d 1009, 1015–16 (9th Cir. 2005).

11        Judge Newman also correctly found (and Judge Peterson correctly confirmed)

12    that Petitioner was incorrect in contending that the requested evidence must be

13    provided as *Brady* material.  The Ninth Circuit has previously expressly stated that due

14    process does not require that principles set forth in *Brady* apply to the determination

15    of probable cause during extradition proceedings.  *Merino v. United States Marshal*,

16    326 F.2d 5, 13 (9th Cir. 1963).  Though Petitioner indicates there is a Sixth Circuit case,

17    *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), which suggests *Brady* applies in

18    situations where the government has conducted its own investigation, the Ninth

19    Circuit's decision in *Merino* is binding on this Court where the Sixth Circuit's in

20    *Demjanjuk* is not.

21        Accordingly, on *de novo* review, the reasoning in the Findings and

22    Recommendations on this point is correct and the Court will adopt them over

23    Petitioner's objections.

24    **II.**      **Exculpatory Evidence in the Possession of Other Agencies**

25        The Magistrate Judge correctly decided that the Petitioner had not provided

26    any legal basis for the argument that the extradition court's order compelling

27    discovery should apply to the entire United States Government.  Just as in the First

28    Amended Petition, Petitioner's objections fail to cite any authority for this position.

1    In the extradition proceedings, Judge Newman originally ordered the

2 production of evidence in the position of "the U.S."  (Order Granting in Part Mot. to

3 Compel at 8.)  In a later filing confirming that the "United States" was "not in

4 possession of any evidence regarding whether the witness statements were obtained

5 by coercion, duress, or torture, and is mindful of its continuing duty to report", the

6 United States Attorney's Office ("USAO") included the following footnote:

7    Like the definition of the term "government" used in the

8    United States' Opposition to the Motion to Compel (ECF

9    46 at n. 1) and at oral argument on the Motion to Compel,

10    this memo uses "United States" to refer to the United States

11    Attorney's Office for the Eastern District of California

12    ("USAO E.D. Cal.") and the Department of Justice's Office

13    of International Affairs ("OIA"). The United States

14    understands that this too is the definition of "U.S." as used

15    in the Court's Order (ECF 49, at 8), and that the Court's

16    Order is limited to documents and materials in the

17    possession of the USAO E.D. Cal. and OIA, with no

18    obligation to request information from Mexico or seek out

19    new material not within the USAO E.D. Cal.'s or OIA's

20    possession from other U.S. agencies or offices. *See, e.g.*,

21    Order at 7 ("As a reminder, the U.S. is under no obligation

22    to request evidence from Mexico or seek out new material

23    not within its possession.") (citation omitted).

24 (Suppl. Mem. Regarding Evid. of Coercion, Duress, or Torture (*In re Extradition of Jose*

25 *Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN, ECF No. 50) at 1–2 & n.1.)

26    The choice to define the "U.S." to mean only the USAO for the Eastern District

27 of California and the Department of Justice's Office of Internal Affairs was seemingly a

28 unilateral decision of the USAO as to the proper interpretation of the extradition

1    court's order.  Given that the Motion to Compel specifically discussed material related

2    to a proceeding in the District Court for the Western District of Pennsylvania,

3    Magistrate Judge Newman's order granting that motion in part would seem unlikely

4    to have been limited to information in possession and control of the United States

5    Attorney's Office for the Eastern District of California and the Department of Justice's

6    Office of International Affairs.  The USAO elected not to file a motion for clarification

7    or otherwise seek approval to limit the scope of the court's order and instead made

8    this decision without the court's input.  In apparent recognition by the USAO that this

9    was not an action approved by the extradition court, the USAO included the above

10   disclosure as a footnote in a supplemental memorandum.  (*Id.*)

11        While the USAO's actions appear to be improper, this issue is ultimately outside

12   of the bounds of what Magistrate Judge Peterson or this Court can consider on

13   extradition habeas review.  As noted above, the habeas court for extradition

14   proceedings is limited to reviewing "(1) the extradition magistrate had jurisdiction

15   over the individual sought, (2) the treaty was in force and the accused's alleged

16   offense fell within the treaty's terms, and (3) there is 'any competent evidence'

17   supporting the probable cause determination of the magistrate."  *Vo*, 447 F.3d at

18   1240.  Though the habeas court can review the decision of an extradition court to

19   deny discovery, *see Quinn*, 783 F.2d at 817 n.41, here, the extradition court made no

20   such decision.  Despite Petitioner being aware that the USAO had limited the scope of

21   the discovery provided (*see* Opp'n to Gov't Req. for Extradition (*In re Extradition of*

22   *Jose Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN, ECF No. 51) at 4 (acknowledging

23   the USAO's interpretation of the Court's order)), Petitioner did not raise an objection

24   or make a motion to the court.  As a result, the extradition was never presented to the

25   extradition court and no decision on this discovery issue was rendered.  Thus, it is

26   outside the scope of extradition habeas review as the extradition court did not "deny

27   discovery".  *See Quinn*, 783 F.2d at 817 n.41.

28   *////*

1      Given the above, a *de novo* review shows the reasoning in Judge Peterson's

2   Findings and Recommendations is well founded on this point and shall be adopted.

3      **III.    Exclusion of Gunshot Residue**

4      Judge Peterson was correct in finding that the extradition court did not abuse

5   its discretion in excluding evidence related to the possible presence of gunshot

6   residue on the decedent's hand.  Petitioner argues that excluding this evidence was

7   improper as it was explanatory.  The extradition court found that the only apparent

8   reason for including this evidence would be to establish that the decedent was also

9   armed but that this could only go to the "unfair advantage" (also referred to as "undue

10  advantage") element of the aggravated homicide charge and was not relevant for any

11  other purpose.  (Order Granting U.S.'s Mot. for Certification of Extradition (*In re*

12  *Extradition of Jose Trinidad Martinez Santoyo*, 2:21-mj-00125-KJN, ECF No. 55) at 12–

13  13.)  The court excluded this evidence as not relevant to the existence of probable

14  cause and ruled that whether there was ultimately undue advantage is an issue for a

15  jury to decide.  (*Id.*)

16     The magistrate judge in extradition proceedings is granted substantial

17  deference in the determination of the admissibility of evidence.  *Collins v. Loisel*, 259

18  U.S. 309, 317 (1922) ("Whether evidence offered on an issue before the committing

19  magistrate is relevant is a matter which the law leaves to his determination, unless his

20  action is so clearly unjustified as to amount to a denial of the hearing prescribed by

21  law.").  While an accused party may present explanatory evidence related to probable

22  cause at extradition proceedings, evidence not related to probable cause is not

23  admissible.  *Id.* at 315–16.

24     Judge Newman's decision to not admit evidence related to the gunshot residue

25  as it only went to the unfair advantage element was not an abuse of discretion.  Judge

26  Newman reasoned that the gunshot residue evidence could serve as the basis from

27  which a jury could find that the decedent was armed and that the unfair advantage

28  element was thus unsatisfied, but that "[a] jury could just as easily believe [the

9

1   Decedent] had residue on his hand because he reached for [Petitioner]'s gun just

2   before Petitioner pulled the trigger." (Order Granting U.S.'s Mot. for Certification of

3   Extradition at 12–13.)  Given this, Judge Newman found that this evidence was not

4   admissible as it did not go to probable cause. (*Id.*)  This is a reasonable and justified

5   determination of the relevance of the gunshot residue evidence and not an abuse of

6   discretion. *See Collins*, 259 U.S. at 317.

7          As such, Judge Peterson's finding in the Findings and Recommendations that

8   Judge Newman did not abuse his discretion is correct and the Court will adopt the

9   Findings and Recommendations on this point.

10  **IV.     Unfair Advantage**

11         Judge Peterson also accurately determined that the extradition court had

12  properly found that there was evidence of undue advantage sufficient to support

13  probable cause.

14         During extradition proceedings, the magistrate judge's limited purpose is "to

15  determine whether there is any evidence sufficient to establish reasonable or

16  probable cause." *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730–31

17  (9th Cir. 1975) (citation omitted).  On habeas review, a probable cause determination

18  "must be upheld if there is any competent evidence in the record to support it."

19  *Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009) (quoting *Quinn v. Robinson*, 783

20  F.2d 776, 791 (9th Cir. 1986)).

21         Here, the extradition court based its determination of unfair advantage on the

22  eyewitness statements from Baudelio Oronia Conchas, Pedro Oronia Conchas, and

23  Manuel Miranda Miranda, all of whom stated that Petitioner was armed and none of

24  whom stated that the Decedent was armed. (*See* Order Granting U.S.'s Motion for

25  Certification of Extradition at 6–8.)  While Judge Newman recognized that there were

26  theoretically "multiple ways to treat the witnesses' statements" and that other contrary

27  evidence might exist (such as the possible gunshot residue evidence addressed

28  above), he found that these issues went to the credibility of the eyewitness's

10

1  statements and thus was suited for presentation to a jury, not the extradition court,

2  who has no role in determining guilt or innocence and only determines whether

3  probable cause exists.  (*Id.* at 12–13.)

4        The statements of the three eyewitnesses are sufficient competent evidence to

5  support Judge Newman's finding of probable cause.  While it is possible that

6  Petitioner will successfully argue at trial that the undue advantage element was not

7  satisfied (whether based on the credibility of witnesses, the presence of contradictory

8  evidence such as the gunshot residue discussed previously, or some other argument),

9  the Magistrate Judge's determination of probable cause related to the undue

10  advantage element shall be upheld as there is competent evidence that supports a

11  reasonable inference that Petitioner had undue advantage when he allegedly shot the

12  decedent.  *See Sainez*, 588 F.3d at 717.

13        Accordingly, Judge Peterson's Findings and Recommendations are correctly

14  reasoned and shall be adopted despite Petitioner's objections.

15  **V.      Speedy Trial Rights**

16        Finally, the Findings and Recommendations are correct in finding that

17  Petitioner was not entitled to speedy trial rights during the extradition proceedings.

18  Petitioner argues that he was entitled to speedy trial rights under the relevant treaty

19  and that those rights were violated as Mexico did not request Petitioner's extradition

20  until 2022 despite the Mexican warrant for Petitioner's arrest being issued in 2014.

21  Magistrate Judge Peterson found that speedy trial rights do not apply to extradition

22  proceedings.  (F. & R. at 6–7.)  In doing so, Judge Peterson cited cases from the First,

23  Second, Fifth, and Eleventh Circuit that explicitly found that the speedy trial right

24  guarantees of the Sixth Amendment did not apply to extradition proceedings.  (*Id.*)

25  He also noted that the Ninth Circuit has previously stated that "[w]hen the United

26  States is the requested country, delay in seeking extradition may be relevant to the

27  Secretary of State's final determination as to whether extradition may go forward. . . .

28  ////

1    The delay may not, however, serve as a defense to judicial extradition proceedings."

2    (*Id.* at 6 n.2 (citing *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir. 1984)).)

3         In his objection to the Findings and Recommendations, Petitioner argues that

4    even if the Sixth Amendment speedy trial rights do not generally apply to extradition

5    proceedings, the treaty between Mexico and the United States effectively re-applies

6    speedy trial rights by stating that "[e]xtradition shall not be granted when the

7    prosecution or the enforcement of the penalty for the offense for which extradition has

8    been sought has become barred by lapse of time according to the laws of the

9    requesting or requested Party."  (Pet'r's Obj. at 4–5.)  Petitioner argues that the "lapse

10   of time" language must include speedy trial rights.  (*Id.* (citing Extradition Treaty art. 7,

11   U.S.-Mex., May 4, 1978, 31 U.S.T. 5059).)

12        This same argument has been expressly rejected by numerous other courts,

13   including other courts in this district and the Sixth and Eleventh Circuit Courts of

14   Appeals.  *See Martinez v. United States*, 828 F.3d 451, 457–58 (6th Cir. 2016) (finding

15   that the "lapse of time" language in the US-Mexico treaty did not apply to Sixth

16   Amendment speedy trial rights as those rights do not create a fixed time bar); *Yapp v.*

17   *Reno*, 26 F.3d 1562, 1567 (11th Cir. 1994) (finding similar "lapse of time" language in

18   a treaty with the Bahamas was a reference to the statute of limitation, not to speedy

19   trial rights); *see also Gonzalez v. O'Keefe*, No. 12-cv-2681-LHK, 2014 WL 6065880, at

20   *4 (N.D. Cal. Nov. 20, 2014) (finding a "lapse of time" provision refers to statutes of

21   limitations and did not include speedy trial rights); *Cerda v. Jenkins*, 2023 WL

22   8845145 (C.D. Cal. Dec. 20, 2023) (same).  Moreover, the Ninth Circuit has previously

23   interpreted this "lapse" language as an incorporation of the applicable statute of

24   limitations.  *Causbie Gullers v. Bejarano*, 293 Fed. Appx. 488, 489 (9th Cir. 2008).  It

25   has also rejected an argument that a treaty containing a provision providing for "the

26   right to use such remedies and recourses as are provided by the law of the requested

27   Party," entitled the accused to speedy trial rights the treaty.  *In re Extradition of*

28   *Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986).  That treaty, which also included a

12

1  "lapse of time" provision similar to the one at issue here, only required that the country

2  requesting extradition "comply with the applicable statute of limitations" and the

3  accused was not entitled to "constitutional protections that the United States

4  Constitution affords defendants in American criminal prosecutions." *Id.*

5       In support of his position, Petitioner only cites a single case from the District

6  Court for the Northern District of Alabama where that court found that speedy trial

7  rights should apply based on the "lapse of time" language.  (Pet'r's Obj. at 4 (citing *In*

8  *re Mylonas*, 187 F. Supp. 716, 721 (N.D. Ala. 1960)).)  However, as the Sixth Circuit

9  noted while addressing that same district court case in deciding *Martinez,* that case

10  "was hardly a landmark extradition decision" and contains no actual analysis of the

11  issue.  *Martinez*, 828 F.3d at 465.  Further, the Eleventh Circuit has since expressly

12  adopted a different position on this same issue and, in doing so, noted that it had

13  "expressly disapproved of *Mylonas*."[2]  *Yapp*, 26 F.3d at 1566–67.

14       Petitioner's main argument appears to be that the "lapse of time" language, as

15  it is contained in a treaty, should be considered under a plain language analysis and

16  that under such analysis, speedy trial rights should have been extended to Petitioner's

17  extradition proceedings.  (Pet'r's Obj. at 3-4.)  Even applying such an analysis,

18  Petitioner's argument is unpersuasive.  Petitioner is correct that "[t]he interpretation of

19  a treaty, like the interpretation of a statute, begins with its text."  *Medellín v. Texas*, 552

20  U.S. 491, 506–07 (2008) (citing *Air France v. Saks*, 470 U.S. 392, 396–397 (1985)).

21  However, interpretation of the plain text of Article 7 from the treaty does not support

22  Petitioner's position.  The treaty bars extradition where "prosecution or the

23  enforcement of the penalty" for the charged offense "become barred by a lapse of

24

---

[2] In his objections, Petitioner says that the Eleventh Circuit disapproved of *Mylonas* on the basis that the
25  Sixth Amendment generally does not apply to extradition proceedings and "said nothing about
the *Mylonas* court's holding that the 'lapse of time' language in the United States-Greece treaty
26  includes the Sixth Amendment Speedy Trial Clause."  (Pet'r's Obj. at 5 n.1.)  To the contrary, the
Eleventh Circuit's discussion of *Mylonas* in *Yapp* appears to expressly recognize this distinction and
27  reject *both* the general Sixth Amendment and the treaty-based arguments.  Yapp, 26 F.3d at 1566-67
("Whether the holding in *Mylonas* is construed as interpretation of the Constitution or interpretation of
28  a treaty, we do not find it persuasive.")

1  time according to the laws of the requesting or requested Party."  Extradition Treaty

2  art. 7, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059.  The plain text of this treaty, with its

3  references to "prosecution or . . . enforcement" as well as to "bars" that result from a

4  lapse of time seems to only incorporate statutes of limitations.  *Id.*  Petitioner seeks to

5  look outside the text of the treaty himself, arguing that at the time the treaty was

6  ratified "a federal court had interpreted the 'lapse of time' phrase in a different treaty

7  to include the Sixth Amendment speedy trial rights[]" and that the treaty's drafters

8  would be aware of that fact.  (Pet'r's Obj. at 5.)  Such evidence is far outside the scope

9  of the text of the treaty and Petitioner does not provide citations to any "aids" for

10  interpretation that might support such a reading, such as "the negotiation and drafting

11  history of the treaty as well as 'the postratification understanding' of signatory

12  nations."  *Medellín*, 552 U.S. at 506–07.

13          Given the above, the Findings and Recommendations issued by Judge

14  Peterson are well reasoned and will be adopted by this Court.

15                                              **CONCLUSION**

16          In accordance with the above,  IT IS HEREBY ORDERED that:

17     1.  The Findings and Recommendations signed September 28, 2023 (ECF No. 16)

18          are ADOPTED IN FULL;

19     2.  The First Amended Petition (ECF No. 11) is DENIED;

20     3.  The Clerk of the Court is directed to close this case.

21

22          IT IS SO ORDERED.

23  Dated:   **March 27, 2024**

24                                                              Hon. Daniel J. Calabretta
                                                                UNITED STATES DISTRICT JUDGE

25

26  DJC1 – MartinezSantoyo23cv00447.JO

27

28